UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JANELLE PARKER | CIVIL ACTION |
| VERSUS | NO. 11-2577 |
| ST. TAMMANY PARISH SCHOOL BOARD | DIVISION "3" |

ORDER

On February 8, 2012, defendant's Rule 12(b)(6) Motion to Dismiss or, in the Alternative, Motion for More Definite Statement Pursuant to Rule 12(e) [Doc. #4] came on for oral hearing before the undersigned. Present were Dan Scheuermann on behalf of plaintiff and David Pittman on behalf of defendant. After the oral hearing, the Court took the motion under advisement. Having reviewed the motion, the opposition, the case law and the parties' oral arguments, the Court rules as follows.

**I.   Background**

The complaint alleges as follows. On August 19, 2007, plaintiff Janelle Parker began her employment with defendant as a cafeteria technician at Covington High School ("Covington High"). In early 2010, Parker applied for a position in the cafeteria at Pontchartrain High School ("Pontchartrain High"). Rachel Brady, manager of the Pontchartrain High cafeteria, informed Parker that only three persons had applied for the position and that only plaintiff had been

interviewed. After the interview, Brady informed Parker that she would provide the paperwork to Sylvia Dunn, Manager/Director, School Food Service Supervisor, for approval of Parker's transfer from Covington High.

Dunn then told plaintiff that she was not qualified for the position at Pontchartrain High. Parker challenged the decision by appealing to Gail Sloan, Superintendent of the School Board at the time, who referred the matter to then-Deputy Superintendent Trey Folse. Folse met with Dunn and Parker. Dunn informed Folse that her decision not to hire Parker was based on negative feedback that she had received from Robin Steinhauer, manager of the cafeteria at Covington High. Defendant offered Parker a choice: transfer to Pontchartrain High as Assistant Manager B, the position for which she had applied, or a promotion to Assistant Manager B at Covington High.

In April 2010, Parker accepted the position of Assistant Manager B at Covington High. Other employees at Covington High did not appreciate Parker's promotion. Parker alleges that she began to experience both sexual and physical harassment and ongoing humiliation, which defendant condoned.

On her first day as Assistant Manager B, co-worker Tammy Williams walked up to Parker and began fondling her from behind. The incident occurred in front of several employees, including Steinhauer, who failed to stop Williams' conduct. The following week, Williams made disparaging remarks about plaintiff while Steinhauer remained silent.

Parker reported the harassment to defendant. She also complained that several co-workers were exchanging sexually-explicit material on their cell phones on school property during work hours. The exchange of sexually-explicit material eventually stopped, but the harassment did not. Co-workers shoved Parker into furniture, hit her with moving carts and yelled and cursed at her.

Parker reported the incidents to officials in the chain of command.

Parker also reported to officials that a co-worker, Katherine King, was cursing at students by calling them "son of a bitch" and telling them "fuck you." No one disciplined King. In retaliation, King pushed carts into Parker when Parker was in her path and blocked her way when Parker was carrying hot or steaming pans from the oven. In November 2010, Parker complained to officials that white employees were referring to black employees by using the "N" word. Parker also reported co-workers for not wearing hair nets and for feeding students food that had fallen to the floor.

Parker filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 30, 2010. Defendant then suspended Parker without pay for three days, December 6, 7, and 8, 2010. In January 2011, defendant placed Parker on administrative leave without pay and recommended her for termination.

On January 13, 2011, and pursuant to a Collective Bargaining Agreement, Parker submitted a written request to Principal McCollum and Steinhauer in which she sought a copy of any alleged employee complaints against her. Parker wanted to prepare for her upcoming hearing. Both McCollum and Steinhauer ignored her requests. Defendant then terminated Parker on January 28, 2011.

Parker amended her charge of discrimination with the EEOC to include retaliation, including her termination. The EEOC issued her a right-to-sue letter on July 27, 2011. On October 12, 2011, Parker timely sued defendant under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000 *et seq.*, 42 U.S.C. § 1981 and Louisiana Revised Statute § 23:967.

II.     **Law and Analysis**

### A.     Standard

In a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff.  *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991).  The Court must resolve all doubts as to the sufficiency of the claim in plaintiff's favor. *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).  Dismissal is warranted if it appears certain that the plaintiff cannot prove any set of facts in support of her claim that would entitle her to relief. *Id.*; *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir.1995) (quoting *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)).

In the context of Title VII, "the ordinary rules for assessing the sufficiency of a complaint apply," and a plaintiff need not establish a *prima facie* case of employment discrimination in her complaint. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002).  To survive a motion to dismiss, a complaint "must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 512.  However, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Indeed, "while legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009).

### B.     Title VII Claim for Race Discrimination

Defendant contends that Parker can not establish a *prima facie* case of race discrimination.

In her opposition, Parker stipulates that she raises no claim for race discrimination under Title VII. Accordingly, defendant's argument here is moot.

      **C.    Title VII and Section 1981 Retaliation Claims for Complaints of Race Discrimination**

With regard to plaintiff's claim for retaliation for complaints of race discrimination, defendant contends only that "[n]othing of what Plaintiff alleges to have occurred constitutes discrimination against a co-employee giving rise to a cause of action as was identified in *CBO[C]S West, Inc*." (Def's Mem. Supp. at p. 2).[1] For the reasons that follow, the Court rejects this argument.

A retaliation claim under Title VII, 42 U.S.C. § 2000e–3(a), and Section 1981 has three elements: (1) the employee engaged in activity protected by Title VII and/or Section 1981; (2) the employer took adverse action against the employee; and, (3) a causal connection exists between the protected activity and the adverse employment action. *Webb v. Cardiothoracic Surgery, Inc.*, 139 F.3d 532 (5th Cir. 1998); *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 140 (5th Cir. 1996) (citing *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996); *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 404 (5th Cir. 1999).[2] "An employee has engaged in activity protected by Title VII if he has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation,

---

[1] In *CBOCS West*, the Supreme Court concluded that Section 1981 "encompasses a complaint of retaliation against a person who has complained about a violation of another persons' contract-related 'right.'" 553 U.S. 442, 445 (2008). There, the plaintiff had asserted a claim for retaliation under Section 1981 after he had been fired because he had complained to managers that a fellow assistant manager had dismissed another black employee for race-based reasons. *Id.* The Supreme Court ultimately held the retaliation claim cognizable under Section 1981.

[2] The Fifth Circuit applies the same elements to Section 1981 retaliation claims as it does to Title VII retaliation claims. *See Barkley v. Singing River Elec. Power Ass'n*, 433 Fed. Appx. 254, 259 (5th Cir. 2011).

proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)).

Here, Parker alleges that she complained to her superiors about white employees referring to similarly-situated black employees by using the "N" word. (Doc. #1 at ¶ 21).[3] Plaintiff alleges that these complaints – along with all of her other complaints – ultimately led to her suspension and termination. (*Id.* at ¶ 24-25, 29). For purposes of a motion to dismiss, the Court finds that these allegations are satisfactory and give defendant fair notice of what the plaintiff's claims are and the grounds upon which they rest. *Swierkiewicz*, 534 U.S. at 512. Defendant will have ample opportunity to conduct discovery on these allegations and, should circumstances so warrant, file an appropriate motion for summary judgment. For now, however, Parkers' retaliation claims survive.

### D.    Title VII Claim for Hostile Work Environment and Sex Harassment

Parker alleges that defendant created a hostile work environment in violation of Title VII. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As the Supreme Court made clear in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986), this language "is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment,"

---

[3] Defendant argued at the oral hearing that complaining about the use of the "N" word to refer to black co-employees is not "protected activity." This Court's review of the case law has revealed no law to support such an argument. Indeed, almost all of the courts that address the use of the "N" word do so in the context of hostile work environment – and not retaliation – claims.

which includes requiring people to work in a discriminatorily hostile or abusive environment. *Id.* at 64 (quoting *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978) (some internal quotation marks omitted)). When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," *Vinson*, 477 U.S. at 65, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *id.* at 67 (internal brackets and quotation marks omitted), Title VII is violated.

The Fifth Circuit has held that to establish the *prima facie* elements of a hostile work environment based on membership in a protected class, a plaintiff must prove that (1) he or she belongs to a protected class; (2) he or she was subjected to unwelcome harassment; (3) the harassment was based on his or her status in the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, – F.3d –, 2012 WL 400569, *3 (5th Cir. Feb. 9, 2012) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)); *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353 (5th Cir. 2001).[4]

Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

---

[4] In older case law from this Court, such as *Black v. Glickman*, the court, relying on both Supreme Court and Fifth Circuit precedent, held that "[t]o establish a claim of hostile work environment discrimination, plaintiff must prove the following elements: '(1) discriminatory intimidation, ridicule and insults, which are (2) sufficiently severe or pervasive that they (3) alter the conditions of employment and (4) create an abusive working environment.'" No. Civ. A. 99-2826, 2001 WL 290160, *3 (E.D. La. Mar. 22, 2001) (quoting *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 594 (5th Cir.1995) & *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). This Court uses the more recent test as outlined in the *Hernandez* opinion cited above.

environment." *Ramsey*, 286 F.3d at 268 (quotation marks and citations omitted). Workplace conduct "is not measured in isolation." *Id.* (quotation marks and citation omitted). In order to deem a work environment sufficiently hostile, "all of the circumstances must be taken into consideration." *Id.* This includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quotation marks and citations omitted). To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation omitted).

To establish a prima facie case of sexual harassment by a supervisor under Title VII, an employee must show: "(1) that [she] belongs to a protected class; (2) that [she] was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition, or privilege of employment." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quotation marks omitted).

With regard to both the hostile work environment and sexual harassment claims under Title VII, defendant's three arguments may be combined. Defendant first argues that Parker fails to allege that she is in a protected class. This argument is specious at best. Parker is a female, and it is well-settled that gender is a protected class. In addition, the Supreme Court has recognized same-sex sexual harassment. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998).

Defendant also contends that there is no allegation that the Board or a supervisor in charge of Covington High School knew of any alleged harassment. But this argument is also meritless. Title VII renders municipalities vicariously liable for the acts of their supervisors that discriminate

against employees in the terms and conditions of their employment. *See Hodges v. City of Houston*, 71 F.3d 877, 1995 WL 726463, *2 (5th Cir. Nov. 15, 1995) (and cases cited therein). Here, Parker alleges that "Tammy Williams walked up to plaintiff and began humping and fondling her from behind." (Doc. #1 at ¶ 12). Parker alleges that this occurred in front of Steinhauer, the cafeteria manager, who did nothing to stop the incident. (*Id.* at ¶ 13). Parker also alleges that she reported the harassment to defendant along with a complaint that her co-workers were exchanging sexually-explicit material on their cell phones. (*Id.* at ¶ 15). She also contends that she reported the incidents to every single official in her chain of command. (*Id.* at ¶ 17). As noted above, Parker's complaint need not contain specific facts to establish each of the elements of a *prima facie* case of hostile work environment. *Swierkiewicz*, 534 U.S. at 511. The Court finds that these allegations sufficiently rebut defendant's argument at this stage of the litigation.

      Lastly, defendant argues that the allegations are insufficient to demonstrate that the alleged hostile work environment was due to Parker's engagement in any protected activity. This argument is closely intertwined with defendant's argument in opposition to Parker's retaliation claims, and the Court has already rejected it above.[5] After allegedly reporting the conduct of her co-workers – including the use of the "N" word and the exchange of sexually-explicit material on cell phones – to defendant, Parker alleges that the harassment and retaliation against her increased. She was "continuously taunted, physically shoved into furniture, intentionally hit with moving carts, yelled and cursed at for months." (Doc. #1 at ¶ 16). After she reported Katherine King for cursing at

---

[5] Defendant asserts the argument here because it is unclear from plaintiff's complaint whether she asserts a stand-alone hostile work environment claim or a hostile work environment claim in retaliation for her complaints of race discrimination. The Court thus notes that, in this Order, it has only addressed the arguments advanced by defendant at this stage of the litigation.

students, Parker contends that King "was allowed to intentionally push carts into plaintiff" and "would . . . intentionally obstruct plaintiff's way every time the latter was carrying hot or steaming pans from the oven." (*Id.* at ¶ 20). As noted, Parker alleges that she also reported white employees who used the "N" word when referring to black employees and cafeteria personnel for not wearing hair nets and serving food to students that had fallen to the floor in violation of Louisiana law. (*Id.* at ¶ 21-22). This, Parker contends, led to her filing her charge of discrimination with the EEOC, which, seven days later, led to her suspension without pay for three days. (*Id.* at ¶ 23-24).

Taking Parker's well-pleaded allegations as true – as it must in light of a motion to dismiss – the Court finds that Parker's allegations, for now, satisfy Title VII's pleading standards. Parker's allegations give defendant fair notice of what her claims are and the grounds upon which they rest. As of now, the Court can not say that dismissal is warranted because Parker can not prove any set of facts in support of her claims that would entitle her to relief. Parker's allegations give defendant ample opportunity to conduct discovery on her claims and then, should circumstances so warrant, file an appropriate motion for summary judgment.[6]

### III.   Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Defendant's Rule 12(b)(6) Motion to Dismiss or, in the Alternative,

---

[6]   While defendant also, in the alternative, asks the Court for a more definite statement, defendant fails to address the case law applicable to such a motion nor the reasons for which a more definite statement is warranted. The Court declines to order a more definite statement after concluding that Parker's allegations give defendant fair notice of what her claims are and the grounds upon which they rest.
The Court also notes that defendant did not address the merits of plaintiff's state law claim, asking only that the Court dismiss it for want of supplemental jurisdiction. Because the Court denies defendant's motion to dismiss, it does not address plaintiff's state law claim, and that claim also survives for now.

Motion for More Definite Statement Pursuant to Rule 12(e) [Doc. #4] is DENIED.

New Orleans, Louisiana, this 23rd day of February, 2012.

*Daniel E. Knowles, III*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**