UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JANELLE PARKER | CIVIL ACTION |
| VERSUS | NO. 11-2577 |
| ST. TAMMANY PARISH SCHOOL BOARD | DIVISION "3" |

ORDER

From January 14, 2013 through January 16, 2013, this Court held a bench trial in the above-captioned matter. Following the bench trial, the parties filed post-trial memoranda. Having reviewed the complaint, the pre-trial and post-trial memoranda, and the trial testimony, the Court rules as follows.

I.      **Findings of Fact**

The following facts will give the reader of this opinion an outline of the behavior at the cafeteria at Covington High School ("Covington High") that gave rise to this lawsuit. Because this is a lawsuit under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000 *et seq.* ("Title VII"), 42 U.S.C. § 1981 and Louisiana Revised Statute § 23:967, the Court must apply the testimony and the evidence presented at trial to the law. Accordingly, there are further findings of fact in the section entitled "Conclusions of Law" that are not repeated here.[1]

---

[1] And, of course, the Court does not repeat here facts, evidence or allegations unnecessary to the rendering of this opinion.

On August 19, 2007, plaintiff Janelle Parker began her employment with defendant St. Tammany Parish School Board ("defendant") as a cafeteria technician at Covington High. In April 2010, Parker applied for a position in the cafeteria at Pontchartrain High School ("Pontchartrain High"). Rachel Brady, manager of the Pontchartrain High cafeteria, informed Parker that only three persons had applied for the position and that only plaintiff had been interviewed. After the interview, Brady informed Parker that she would provide the paperwork to Sylvia Dunn, Manager/Director, School Food Service Supervisor, for approval of Parker's transfer from Covington High.

Dunn then told plaintiff that she was not qualified for the position at Pontchartrain High. Parker challenged the decision by appealing to Gail Sloan, Superintendent of the School Board at the time, who referred the matter to then-Deputy Superintendent Trey Folse III. Folse met with Dunn and Parker. Dunn informed Folse that her decision not to hire Parker was based on negative feedback that she had received from Robin Steinhauer, manager of the cafeteria at Covington High. Defendant offered Parker a choice: transfer to Pontchartrain High as Assistant Manager B, the position for which she had applied, or a promotion to Assistant Manager B at Covington High.

In April 2010, Parker accepted the position of Assistant Manager B at Covington High. Other employees at Covington High did not appreciate Parker's promotion. Parker alleges that at this time, she began to experience both sexual and physical harassment and ongoing humiliation, which defendant condoned through its principals and employees.

On her first day as Assistant Manager B, co-worker Tammy Williams allegedly walked up to Parker and began fondling her from behind. The incident occurred in front of several employees, including Steinhauer, who failed to stop Williams' conduct. The following week, Williams made

2

disparaging remarks about Parker while Steinhauer remained silent.

On the stand, Williams vehemently – and credibly – denied all allegations of sexual misconduct. She admitted that she had informed Parker that her husband had placed a pillow over her head during sexual encounters, but that these were private conversations with Parker, as one would have with a friend. Williams noted that she and Parker had been friends when Parker first began work. Parker attended Williams' grandson's baby shower and was at the hospital during the birth. Parker even bought Williams a Bible with pictures because the King James version was difficult to understand. Vanessa Stevens, a black cafeteria technician at Covington High, reported that when Williams spoke of her sex life with her husband, Williams was "more hurt than anything." Stevens believed Williams only wanted her co-workers to listen to her and to help her.

Williams also admitted that she had exposed her breasts in a sports bra to Farah Thigpen, the cafeteria baker, and Rhonda Spinks, a lunchroom technician at Covington High for 29 years, in the bathroom after breast augmentation surgery in December 2005. Of course, Parker was not employed at Covington High at the time. Spinks testified that she once saw Williams jiggle her breasts, but Williams never exposed them. Spinks also testified that Williams never exposed her breasts except perhaps once in the bathroom after she had had surgery on them. Thigpen denied any breast exposure by Williams. Steinhauer never heard of any incident involving the exposure of Williams' breasts. Peggy Murray, a lunchroom technician, testified that Williams exposed her breasts on the "take-out" side of the lunch counter by lifting her shirt. But she also clarified that this occurred before Parker worked at Covington High. Williams never slapped Parker as Parker alleges, but she once, at least in Spinks's presence, touched Parker on her shoulder. Parker reported Williams' sexual behavior to her superiors, such as McCollum, all employed by defendant.

3

There was much testimony at trial concerning alleged pornographic images on cell phones. Parker complained that several co-workers were exchanging sexually-explicit material on their cell phones on school property during work hours. Spinks testified that she only saw cartoon jokes on the cell phones. She reported that she never saw genitalia, although she may have seen a cartoon penis on one occasion. Williams and Katherine King, another lunchroom technician, would forward the images to Spinks on her cell phone. Stevens testified that she informed Williams that she did not need to look at any porn on Williams' cell phone because she has a husband. Williams testified that the cartoons were innocuous and harmless and gave as examples Betty Boop in a bikini and Cowgirl Up. Williams did not consider the images pornographic, and, from the description of the images by every witness other than Parker, neither does the Court. Williams testified that Parker asked what they were laughing at one day when they were looking at their cell phones. Parker then grabbed the cell phone out of Williams' hands to look at the images. Thigpen and Murray both testified that they never saw any pornography on cell phones.[2] Both Deborah McCollum, the principal of Covington High, and Steinhauer testified that they were unaware of any reports of pornography on cell phones. The exchange of such cartoons on the co-workers' cell phones eventually stopped, according to Parker herself. And contrary to Parker's allegations, every witness who testified reported that there was never any pornography posted on a bulletin board at work.

There was also testimony as to the use of improper language at the cafeteria during school hours. Parker reported to officials that a co-worker, Katherine King, was cursing at students by

---

[2] There was testimony adduced at trial that Parker recorded her conversations with Murray and told her what to say to their superiors. And defendant submitted the transcript of a telephone conversation between Parker and Murray in which Parker notes that she will help Murray remember "stuff." In the Court's view, this casts doubt on the credibility of Murray's testimony on the stand, and the Court relies little on Murray's testimony for this reason alone.

calling them "son of a bitch" and telling them "fuck you." Spinks confirmed that King had mumbled the "F" word in front of students. Stevens also heard King use the "F" word and reported it to Steinhauer. No one disciplined King. In retaliation, King pushed carts into Parker when Parker was in her path and blocked her way when Parker was carrying hot or steaming pans from the oven.

In November 2010, Parker complained to officials that white employees were referring to black employees by using the "N" word. Spinks vehemently denied Parker's allegations that she called King the "N" word. King is Caucasian. Steinhauer testified that "Nigger" is Shiloh Cedatol's brother-in-law's nickname, and that the only time that she had used the word was in reference to him. Cedatol was another lunchroom technician who did not like Parker and made that fact well known. Parker also reported co-workers for not wearing hair nets and for feeding students food that had fallen to the floor. Spinks testified that King and Williams occasionally forgot to wear their hairnets.

In late November 2010, Parker contacted the Equal Employment Opportunity Commission ("EEOC") and filled out a questionnaire. There is no indication on the questionnaire, and no evidence adduced at trial, that Parker ever formally filed it with the EEOC or that defendant ever knew of it. Following a November 30, 2010 Just Cause hearing regarding Parker's inability to perform her duties, defendant suspended Parker without pay for three days, December 6, 7, and 8, 2010. In January 2011, defendant placed Parker on administrative leave without pay, and McCollum recommended her for termination.

On January 13, 2011, and pursuant to a Collective Bargaining Agreement, Parker submitted a written request to Principal McCollum and Steinhauer in which she sought a copy of any alleged employee complaints against her. Parker sought to prepare for her upcoming hearing. Both McCollum and Steinhauer ignored her requests. Defendant then terminated Parker on January 28,

2011.

Parker formally filed her charge of discrimination with the EEOC on April 22, 2011. The charge included claims of retaliation, including her termination, and claims of sexual harassment and hostile-work environment. The EEOC issued her a right-to-sue letter on July 27, 2011. On October 12, 2011, Parker sued defendant under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000 *et seq.* ("Title VII"), 42 U.S.C. § 1981 and Louisiana Revised Statute § 23:967.

## II.   Conclusions of Law

Five claims proceeded to trial: (1) retaliation claims for complaints of race discrimination under Title VII and 42 U.S.C. § 1981, (2) claims of a hostile work environment and sexual harassment under Title VII, and (3) Parker's claim under Louisiana Revised Statute § 23:967.

### A.   Title VII and Section 1981 Retaliation Claims for Complaints of Race Discrimination

The familiar framework established by the United States Supreme Court for allocating the burdens of proof and persuasion in a Title VII case guides the Court here as it does in all such cases. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (setting out the order and allocation of proof in private employment discrimination cases under Title VII). As the Fifth Circuit has held, the *McDonnell Douglas* test also applies to Title VII unlawful retaliation cases. *See Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996); *McMillan v. Rust College, Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983). A retaliation claim under Title VII, 42 U.S.C. § 2000e–3(a), and Section 1981 has three elements: (1) the employee engaged in activity protected by Title VII and/or Section 1981; (2) the employer took adverse action against the employee; and (3) a causal connection exists between the protected activity and the adverse employment action. *Webb v. Cardiothoracic Surgery, Inc.*, 139 F.3d 532 (5th Cir. 1998); *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 140 (5th Cir. 1996)

(citing *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996)); *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 404 (5th Cir. 1999).[3]  "An employee has engaged in activity protected by Title VII if he has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (quoting 42 U.S.C. § 2000e-3(a)).

If a plaintiff succeeds in making a prima facie case, the burden then shifts to the defendant to proffer a legitimate rationale for the underlying employment action. *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001).  If the defendant makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's articulated reason for the employment action was a pretext for retaliation.  *Id.*

In November 2010, Parker complained to her superiors about white employees referring to similarly-situated black employees by using the "N" word.[4]  Deborah McCollum, the Principal of Covington High, confirmed Parker's complaints.  Parker thus engaged in activity protected by Title VII and/or Section 1981.  In addition, there is no dispute that Covington High terminated Parker on January 28, 2011.  Covington High thus took adverse action against Parker.  And lastly, Parker's

---

[3]   The Fifth Circuit applies the same elements to Section 1981 retaliation claims as it does to Title VII retaliation claims. *See Barkley v. Singing River Elec. Power Ass'n*, 433 Fed. Appx. 254, 259 (5th Cir. 2011).

[4]   For the first time in its pre-trial memorandum, defendant raised the argument that Parker's claims had prescribed.  Defendant contends that all of the acts that Parker alleges constitute sexual harassment occurred before April 2010.  Because Parker failed to file her complaint with the EEOC until April 22, 2011, defendant maintains that the Court may only consider those incidents that occurred within 300 days before the filing of the EEOC complaint.   Because the Court resolves this lawsuit on the merits, it does not address defendant's prescription argument.  With regard to Parker's retaliation claim, however, the Court notes that she complained of the use of the "N" word within 300 days of the filing of the EEOC complaint.

termination occurred approximately two to three months after her complaints.  The Fifth Circuit has noted that  "[c]lose timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).  That court has noted that "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (quoting *Weeks v. NationsBank, N.A.*, No. Civ. A. 3:98-CV-1352M, 2000 WL 341257, at *3 (N.D. Tex. Mar. 30, 2000)).  Here, the Court finds that the two to three months between Parker's complaints and her termination provide the causal connection necessary to establish a prima facie case of retaliation.

Per *McDonnell Douglas*, the burden now shifts to defendant to proffer a legitimate rationale for the underlying employment action.  The overwhelming weight of the credible testimony at trial supports defendant's argument that it had a legitimate reason to terminate Parker.  McCollum had the power to recommend the termination of Parker and did so because Parker was inefficient. Before McCollum recommended Parker's termination, she reviewed Parker's evaluations.  While Parker had good evaluations when she began her employment, the evaluations deteriorated after Parker became Assistant Manager B.    McCollum had occasion to question Parker's honesty due to contradictory statements from Parker.  McCollum noted problems with Parker performing the duties assigned to her in the rotation schedule and that she had received numerous complaints from other employees that Parker was not performing her duties during rotation.  Vanessa Stevens noted that Parker refused to rotate.  This happened more than once, and Stevens reported it to Robin Steinhauer, the cafeteria manager at the time of Parker's employment, and McCollum.  Parker often failed to sign off on her duties.

There was testimony regarding an incident that involved the cards for breakfast that the students use to the effect that Parker took too long to put the cards in numerical order. This slowed down the whole process at breakfast. And while Parker testified that she received more duties after she complained of the racism, McCollum noted that they actually removed duties from Parker at that time because she could not fulfill the duties already assigned to her. Sylvia Dunn, the Food Services Supervisor for defendant for 24 years, met with Parker four times to explain Parker's duties to her. Dunn noted that a clarification of the duties of an Assistant Manager B is not routine, yet she had to clarify them to Parker on four occasions. Steinhauer also noted that she had to continually alter Parker's duties because she had difficulty performing them and always needed to have someone help her. McCollum received numerous complaints that Parker took notes all day and spent a lot of time staring at the production schedule, writing down her tasks. Steinhauer also confirmed this.

There was also testimony regarding an incident that involved Parker and Terri Dash. Parker confronted Dash in the office of the cafeteria, and this disrupted the entire cafeteria. McCollum determined that both Parker and Dash were responsible. Parker admitted that she had approached Dash with her finger in the air. Steinhauer witnessed the incident and confirmed that Parker lunged at Dash with her finger out and that Parker had tried to hit Dash after telling Steinhauer and Dash that they didn't know with whom they were dealing. This incident was the subject of a just-cause hearing at which McCollum concluded that both parties were at fault. Indeed, Parker was involved in no less than five just-cause hearings during her tenure at Covington High, on August 25, 2010, November 11, 2010, November 30, 2010, January 12, 2011 and January 20, 2011. All of the just-cause hearings related to Parker's inability to perform her duties efficiently and her poor rapport with her fellow co-workers.

Steinhauer also noted that Parker's performance deteriorated after her promotion to Assistant Manager B. Steinhauer noted that Parker was a hard worker at first, that she reported to work on time, that she helped her co-workers and was always in proper attire. Later, however, Steinhauer was forced to prohibit Parker from managing other employees because of her "bossy" tone. Steinhauer even refused to let Parker question other employees. Steinhauer noted that Parker often missed lunch to continue working because she could not perform her duties on time. Steinhauer noted that once, Parker lost a band-aid in the mashed potatoes and served them to a child even so. Farah Thigpen, the baker in the cafeteria, noted that Parker had a flippant attitude about this incident.

Michael Cosse, the Administrative Supervisor to whom McCollum recommended Parker's termination, held two Level 2 Hearings with Parker, during which Parker was argumentative. Parker had representation by the federation at both hearings. Cosse had reviewed Parker's personnel file and the discipline imposed for Parker's failure to perform her duties efficiently. He noted that Parker had violated rules pertaining to her job responsibilities. After the two hearings, Cosse recommended to Folse, now defendant's Superintendent, that he uphold McCollum's recommendation of termination. The decision to do so was not influenced by outside factors and had nothing to do with any complaint by Parker of racism or sexual harassment. At the hearings with Cosse, Parker attempted to raise the issues, but Cosse instructed her not to do so as that was not the reason for the hearings.

All of this evidence and testimony supports defendant's position that it had a legitimate rationale for terminating Parker. The overwhelming amount of evidence reveals that Parker had difficulty performing her duties on the job and that she had a horrible rapport with the majority, if

not all, of her co-workers. Observing their demeanor on the stand, the Court particularly finds the testimony of McCollum, Cosse, Dunn and Folse to be credible, especially given that they were not a part of the day-to-day, "she-said, she-said" disputes in the cafeteria.

The burden now shifts to Parker to demonstrate that defendant's articulated reason for the employment action was a pretext for retaliation. This, Parker failed to do. The only evidence and/or testimony that defendant's articulated reason for the employment action was a pretext for retaliation is Parker's self-serving testimony that someone was out to sabotage her. Only Stevens testified that once someone might have turned off an oven and/or unplugged devices to sabotage Parker. No other person testified to this effect, and the witnesses who mentioned it – such as McCollum – never had any reason to believe that there was in fact someone sabotaging Parker. And Stevens' testimony was hazy at times. Indeed, she was unsure of her own testimony on the stand regarding this point. The Court can thus not find that Parker has met her burden to demonstrate that the articulated reason for the employment action was a pretext for retaliation. Accordingly, these claims fail.

### B. Title VII Claim for Hostile Work Environment and for Sexual Harassment

Parker alleges that defendant created a hostile work environment in violation of Title VII. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). As the Supreme Court made clear in *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986), this language "is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional

intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment," which includes requiring people to work in a discriminatorily hostile or abusive environment. *Id.* at 64 (quoting *Los Angeles Dep't of Water & Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978) (some internal quotation marks omitted)). When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," *Vinson*, 477 U.S. at 65, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *id.* at 67 (internal brackets and quotation marks omitted), Title VII is violated.

The Fifth Circuit has held that to establish the *prima facie* elements of a hostile work environment based on membership in a protected class, a plaintiff must prove that (1) he or she belongs to a protected class; (2) he or she was subjected to unwelcome harassment; (3) the harassment was based on his or her status in the protected class; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, – F.3d –, 2012 WL 400569, *3 (5th Cir. Feb. 9, 2012) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)); *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 353 (5th Cir. 2001).[5]

Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently

---

[5] In older case law from this Court, such as *Black v. Glickman*, the court, relying on both Supreme Court and Fifth Circuit precedent, held that "[t]o establish a claim of hostile work environment discrimination, plaintiff must prove the following elements: '(1) discriminatory intimidation, ridicule and insults, which are (2) sufficiently severe or pervasive that they (3) alter the conditions of employment and (4) create an abusive working environment.'" No. Civ. A. 99-2826, 2001 WL 290160, *3 (E.D. La. Mar. 22, 2001) (quoting *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 594 (5th Cir.1995) & *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). This Court uses the more recent test as outlined in the *Hernandez* opinion cited above.

severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268 (quotation marks and citations omitted). Workplace conduct "is not measured in isolation." *Id.* (quotation marks and citation omitted). In order to deem a work environment sufficiently hostile, "all of the circumstances must be taken into consideration." *Id.* This includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quotation marks and citations omitted). To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation omitted).

To establish a prima facie case of sexual harassment under Title VII, an employee must show: "(1) that [she] belongs to a protected class; (2) that [she] was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; and (4) that the harassment affected a term, condition, or privilege of employment." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quotation marks omitted).

The problem with Parker's claims derives from her inability to prove that the harassment that allegedly created the hostile work environment was based on her status in the protected class, *i.e.*, that the harassment occurred due to Parker's female gender. There was simply no testimony nor evidence – even by Parker herself – that the alleged (1) humping of her by Williams, (2) the pornography on the cell phones, (3) the blocking of her car, or (4) any of the alleged insults occurred because she is female. If these events occurred – and the Court does not find that they did – they would have occurred due to Parker's poor rapport with her co-workers, a fact on which this Court

13

relies heavily given that every witness, including Parker herself, confirmed it.  Indeed, Parker's demeanor on the stand at trial was consistent with the manner in which all of the other witnesses testified that she acted on the job: defiant, oversensitive, and, apart from the Court itself, disgruntled at and untrustworthy of authority.[6]  The evidence and the testimony adduced at trial simply do not support a finding that the harassment – if it occurred – occurred because of her female gender.  Accordingly, these claims fail as well.

    **C.**  **Claim under Louisiana Revised Statue § 23:697**

The basis of Parker's claim under Section 23:697 is that her employer retaliated against her for complaining about race discrimination and other activities such as failing to wear hairnets, which is conduct that violates state law. But under the state statute, unlike the federal anti-retaliation provisions, Parker must prove that the workplace act or practice that she complained about was an actual violation of state law. *Corley v. La. ex rel. Div. of Admin.*, 816 F. Supp. 2d. 297, 327 (M.D. La. 2011).  There was no evidence at trial that there was an actual violation of state law.  Allegations were set forth, but no evidence supported an actual violation of state law.  And no state agency or any one of Parker's superiors ever determined that there was an actual violation of state law.  Accordingly, this claims fails.

**III.**  **Conclusion**

As Sylvia Dunn testified at trial, juvenile behavior and personality conflicts waxed rampant at the Covington High cafeteria.  The Court finds that the testimony and evidence adduced at trial reveal that the Covington High cafeteria resembled – at the time of Parker's employment – the late

---

[6]  There was testimony and evidence adduced at trial that Parker surreptitiously tape-recorded numerous conversations at meetings with her superiors and others.

14

1980s soap operas *Dynasty* and *Dallas* – albeit without the coiffed hair, expensive costumes and sumptuous mansions – more than an actual place of employment. However, bickering and personality conflicts at a place of employment do not give rise to liability under either federal or state law. Such a holding would subject nearly every place of employment in the United States to liability under such laws. This, the Court is unwilling to do.

For the foregoing reasons, the Court finds that plaintiff Janelle Parker has failed to carry the burden on her claims of sexual harassment, hostile work environment and retaliation under Title VII and 42 U.S.C. § 1981 and under Louisiana Revised Statute § 23:967.

New Orleans, Louisiana, this 27th day of June, 2013.

                                                  _____
                                                  **DANIEL E. KNOWLES, III**
                                                  **UNITED STATES MAGISTRATE JUDGE**